IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re RESOLUTE ENERGY CORPORATION SECURITIES LITIGATION | ) ) ) ) Civ. No. 19-77-RGA |

**MEMORANDUM**

In this consolidated class action, Lead Plaintiff William A. Langdon, Jr. asserts claims on behalf of himself and other stockholders against Resolute Energy Corporation and the members of Resolute's Board of Directors (collectively, "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 17 C.F.R. 240.14a-9, as well as breaches of fiduciary duty.[1] Lead Plaintiff alleges that Defendants authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Proxy") with the Securities and Exchange Commission. The Proxy was used to solicit stockholder votes in favor of the merger of Resolute and Cimarex Energy Company, which was completed on March 1, 2019.

On March 18, 2020, the Court dismissed Lead Plaintiff's original complaint pursuant to Rule 12(b)(6), but with leave to amend.[2] (D.I. 30). Lead Plaintiff filed an amended complaint on April 13, 2020 (D.I. 33), and Defendants responded with another motion to dismiss on May 28, 2020. (D.I. 35). The Court will now resolve Defendants' second motion to dismiss. The Court

---

[1] The individual defendants, who are members of Resolute's Board of Directors, are Nicholas J. Sutton, James E. Duffy, William K. White, Gary L. Hultquist, Tod C. Benton, Thomas O. Hicks, Jr., Robert J. Raymond, Janet W. Pasque, Richard F. Betz, Joseph Citarrella, and Wilkie S. Colyer, Jr.

[2] *Mack v. Resolute Energy Corp.*, 2020 WL 1286175 (D.Del. Mar. 18, 2020).

1

has subject matter jurisdiction over Lead Plaintiffs' federal securities claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

For the reasons stated below, Defendants' motion to dismiss is granted. The federal securities claims are dismissed for failure to state a claim, and the state law claim is dismissed because the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court "may decline to exercise supplemental jurisdiction" over state-law claims if it "has dismissed all claims over which it has original jurisdiction").

## I. STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive the motion to dismiss, the complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555. In assessing the plausibility of a claim, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated under law." *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988).

## II. DISCUSSION

Section 14(a), and Rule 14a-9 promulgated thereunder, prohibit a corporation from issuing a proxy "containing any statement which … is false or misleading with respect to any material

fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 15 U.S.C. § 78n(a)(1); 17 C.F.R. § 240.14a–9(a). "To prevail on a § 14(a) claim, a plaintiff must show that '(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.'" *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (quoting *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (internal quotation marks omitted)). Although Defendants present arguments based on the elements of materiality and loss causation, I need only address loss causation.

The amended complaint does differ from the original complaint, but, before I discuss the amended complaint, I give a brief recap of the earlier dismissal.

In dismissing the original complaint, the Court found that Lead Plaintiff failed to plead, among other things, loss causation. (D.I. 30 at 19-25). Loss causation requires a showing of "a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). A complaint fails to allege loss causation if it does not "provide the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation." *Id*. at 347. Here, the Court noted that the original complaint failed to "offer any notice of what the relevant economic loss might have been." (D.I. 30 at 23). The Court further explained that there were two possible economic loss theories Lead Plaintiff could have argued, but both were insufficient. (*Id*. at 19-25).

Under the first theory, in an alternate reality, Resolute stockholders vote against the merger because there were no material misstatements and, as a result, the Resolute stockholders are left

3

holding Resolute stock on March 1, 2019, the date the merger closed. (*Id*. at 20). Thus, the measure of the harm under the first theory is the difference between the actual merger consideration and the value of Resolute stock, as a standalone company, on March 1, 2019. (*Id*.). at 20). Because the merger consideration was $35 per share (to be paid in cash, Cimarex stock, or a mix of stock and cash), Lead Plaintiff would have had to show that the *market value* of Resolute's stock on March 1, 2019, if it had remained a standalone company, would have been greater than $35 per share. [3] (*Id*. at 20-21).

The Court concluded, however, that it was "virtually impossible to plausibly allege that if the merger had been voted down, Resolute stock would have been trading at over $35 per share (or close to that) on March 1, 2019." (*Id*. at 21, *see also id*. at 23 ("Plaintiffs do not state, and are unable plausibly to state that, had the shareholders retained their Resolute stock without a merger, the market value of their shares would have been greater than $35 per share.")). As a factual matter, "Resolute stock was trading at about $30 per share immediately before the merger was announced," so "the merger consideration was about 15% greater than the value the market placed on Resolute stock at the time of the merger announcement." (*Id*. at 20-21). And, as a theoretical matter, "the merger consideration is usually going to be greater than the market value or actual value of the shares without consideration of the merger" due to the existence of a merger premium. (*Id*.). Finally, for the reasons explained in the opinion, "The financial analyses of Goldman Sachs and Petrie Partners detailed in the proxy statement … do not support an assertion that Resolute shares would have been trading at above $35 at the time of the merger." (*Id*. at 23). Accordingly,

---

[3] The original complaint described the merger consideration as being "the right to receive 0.3943 shares of Cimarex common stock [per share], $35 per share in cash, or a combination of $14 per share in cash and 0.2366 share of common stock subject to proration." (D.I. 23, ¶ 3; *see* D.I. 30 at 2). In my earlier opinion, some of my analysis oversimplified the merger consideration as being $35 per Resolute share.

Lead Plaintiff had not plead and appeared unable to plead loss causation based on a theory that stockholders would have received more than $35 per share by voting down the merger.

Under the second theory, also in an alternate reality, Resolute stockholders vote in favor of the merger, but because the Board negotiated a better deal with Cimarex, the Resolute stockholders receive more than $35 per share. (D.I. 30 at 21). The measure of the harm under the second theory is the difference between the merger consideration the Board actually obtained and a hypothetical better merger consideration the Board could have obtained. Thus, the cause of the harm under the second theory is the failure of the Board to negotiate a better deal, not the material misstatements that persuaded stockholders to vote in favor of the merger. Loss causation requires "a causal connection" between the material misrepresentation and the monetary loss. *Dura*, 544 U.S. at 342. Because the actions of the Board, and not the material misstatements, are the cause of harm under the second theory, the Court previously rejected the second theory as an adequate basis to plead loss causation. (*See* D.I. 30 at 21-22).

The amended complaint contains some new allegations. One area where it is unchanged is in its description of Lead Plaintiff.[4] "Lead Plaintiff was at all relevant times a Resolute stockholder." (D.I. 33, ¶ 20). Based on the attached certification, Lead Plaintiff held 50,000 shares of Resolute stock before the announcement of the merger on November 19, 2018. We do not know what form of merger consideration Lead Plaintiff asked for or received in exchange for his Resolute stock, but we do know he did not receive all cash. We know this because of another new allegation: "insufficient funds had been set aside so that under the proration formula no

---

[4] Lead Plaintiff was not a named Plaintiff in any of the three lawsuits filed in January 2019 that started this litigation. The three original Plaintiffs owned 300 shares (No. 19-77-RGA, D.I. 1-1), 29 shares (No. 19-79-RGA, D.I. 1-1), and 85 shares (No. 19-86-RGA, D.I. 1-1) of Resolute stock.

stockholder was able to receive all cash consideration no matter which election he or she made." (D.I. 33, ¶ 3). What Lead Plaintiff has done with the Cimarex stock he received as merger consideration is not alleged. He might still own some or all of it. Lead Plaintiff still does not assert that in the absence of the merger that the Resolute stock would have been trading at more than $35 on March 1, 2019, or any other date.[5] Nor does he make any allegations about market events relating to Cimarex stock after March 1, 2019.

Instead, Lead Plaintiff now asserts that at $35 per share, the merger consideration "undervalued Resolute shares by more than $3.50 per share" or by $28,578,396 for the class. (D.I. 33, ¶ 3). Specifically, Lead Plaintiff asserts that the amended complaint adequately pleads loss causation and directs the Court's attention to paragraphs 107-111 therein.[6] (*See* D.I. 37 at 15 (citing D.I. 33 ¶¶ 107-111)). In those paragraphs, Lead Plaintiff alleges that "the 'cash election consideration' of $35 per share of Resolute was unfairly low at the time the Merger was announced," (D.I. 30 ¶ 107); "the $35.00 nominal offer price was too low," (*id*. at ¶ 108); and Resolute stock was "undervalued in the merger agreement," (*id*. at ¶ 109). These allegations, focused on the low "offer price" in the "merger agreement," suggest that Lead Plaintiff is proceeding under the second theory, where the loss is a hypothetically better offer price in the merger agreement, because the Board negotiates a better deal. As the Court previously explained,

---

[5] It may be impossible, consistent with Rule 11, to make such an allegation. But allegations about "future prospects," being "well-positioned," or the like are simply speculative. (*See* D.I. 33, ¶¶ 68, 69).

[6] In arguing that the amended complaint adequately pleads loss causation, Lead Plaintiff does not direct the Court's attention to paragraph 121, which alleges that "Lead Plaintiff and the Class suffered damages and actual economic losses (i.e. the difference between the value they will receive as a result of the Transaction and the true value of their shares prior to the merger." (D.I. 33 ¶ 121). I do not think Plaintiff can successfully state a claim by saying that the Resolute stock was undervalued, meaning that the price that he paid for the Cimarex stock was inflated. As the Supreme Court stated in analogous circumstances, "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Dura*, 544 U.S. at 342.

6

however, loss causation cannot be based on a theory that the stockholder could have received a better deal, because then the cause of the harm is the Board's failure to negotiate a better offer and not, as required by the law, the material misstatements. *See In re GTx, Inc. S'holders Litig.*, 2020 WL 3439356, at *5 (S.D.N.Y. June 23, 2020) (dismissing section 14(a) complaint for failure to plead loss causation based on an "alternate reality" notwithstanding allegations that "the market agrees that the Merger [c]onsideration inadequately valued [the stock]."); *Kocourek v. Shrader*, 391 F.Supp. 3d 308, 332-33 (S.D.N.Y. 2019) (damages have to arise from the transaction that occurred, not from a hypothetical transaction); *In re Tangoe, Inc. Stockholders Litigation*, 333 F.Supp. 3d 77, 108-09 (D.Conn. 2018) (dismissing complaint for failure to allege loss causation, even though Plaintiff alleged that shareholders "should have received more consideration for their shares").

Put simply, Lead Plaintiff cannot rely on the theory that whatever combination of cash and Cimarex stock that he obtained in the merger makes out an economic loss caused by the material omissions and/or false statements of which he complains.[7] There are no allegations of an actual economic loss for two reasons. First, there are no allegations about what Lead Plaintiff did with his shares of Cimarex stock after the merger. *See Dura*, 544 U.S. at 342-43 (describing the "tangle of factors affecting price"). Second, even were that not the case, and Lead Plaintiff stated that he had indeed received all cash, he cannot state an economic loss and loss causation simply by alleging that the Resolute stock was undervalued at the time of the merger (no matter how

---

[7] The theory in the complaint was "material omissions" based on negligence. (*See generally* D.I. 30). The theory in the amended complaint is also based on "material omissions" but at other times it is hard to tell whether Lead Plaintiff is alleging something more. (See D.I. 33, ¶ 119 (alleging negligence but also alleging the directors "knew the truth"). In the end, I do not need to resolve this since I am not deciding the motion to dismiss on the "materiality" arguments.

precisely, if not plausibly, he puts a number on it).[8]  *See GTx,* 2020 WL 3439356, at *5 (rejecting an argument based on the theory that "had the [c]ompany remained independent, [it] would have achieved a hypothetically higher stock value") ; *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 404 (S.D.N.Y. 2020) (dismissing complaint because plaintiff failed to plead loss causation, stating "[t]o permit Plaintiff to recover damages on the assumption that had the Company remained independent, it would have achieved the results reflected in the Initial Management Projections, thus would give him a 'windfall' wholly unrelated to the violation he claims."), app. pending, No. 20-1530 (2d Cir. filed May 6, 2020); *In re Ocera Therapeutics, Inc. Securities Litigation*, 2018 WL 7019481, *11 (N.D.Cal. Oct. 16, 2018) (dismissing section 14(a) claims for failure to allege loss causation when it was described as "the difference between the price Ocera stockholders received and the 'true value' of their shares") ; *Tangoe*, 333 F.Supp.3d at 109 (allegation insufficient that "Tangoe shares would have been more valuable if it remained a standalone company); *Trahan v. Interactive Intelligence Group, Inc*., 308 F.Supp.3d 977, 1000 (S.D.Ind. 2018) (holding loss causation not pled by allegation that share price was "depressed" on the date of sale causing damages of "the difference between the price Interactive shareholders received and Interactive's true value at the time of [the Merger].").

Accordingly, the amended complaint fails to adequately plead loss causation, an essential element of a Section 14(a) claim.  The Section 14(a) claim (Count I) is dismissed with prejudice.[9]

The Supreme Court warned:

---

[8] Lead Plaintiff now alleges at various portions in the amended complaint that the Cimarex stock was overvalued at the time of the merger agreement.  The analysis in terms of economic loss and loss causation is the same whether Resolute stock was undervalued or Cimarex stock was overvalued.

[9] Lead Plaintiff makes no request for leave to amend a second time.

8

> It should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind. At the same time, allowing a plaintiff to forgo giving any indication of the economic loss and proximate cause that the plaintiff has in mind would bring about harm of the very sort the statutes seek to avoid. It would permit a plaintiff with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence. Such a rule would tend to transform a private securities action into a partial downside insurance policy.

*Dura*, 544 U.S. at 347–48 (cleaned up, including omission of citations). Maybe the Supreme Court had in mind cases similar to the merger litigation here – three hastily-drafted complaints, none of them alleging anything more than that there were material omissions in the proxy statement (with which I disagreed when Lead Plaintiff put his best foot forward in the original consolidated complaint (D.I. 23)) and that plaintiffs and the class they represent has been damaged. This kind of case is not rare. For example, according to the CM/ECF system, counsel for Plaintiff filed eighty-five cases in this Court alleging violations of sections 14(a) and 20(a) in the slightly more than three years from January 13, 2017 to February 12, 2020.[10] For the seventeen cases counsel filed in 2018, which I looked at more closely, three had preliminary injunctions filed (two of the them soon thereafter withdrawn and the other one transferred with the case to another district),[11] two had attorney's fees litigation,[12] two reserved the right to have attorney's fees litigation but were resolved without court involvement,[13] and all but one of the rest had no litigation, just the

---

[10] I verified this for the seventeen cases filed in 2018. I believe it is true for the other sixty-eight cases, but I have not verified that. Counsel had not filed any securities cases in this Court before 2017, and has not filed any securities cases here since February 2020.

[11] Nos. 18-126-MAK; 18-1110-MN; 18-1567-CFC.

[12] Nos. 18-286-RGA; 18-1210-RGA.

[13] Nos. 18-6-LPS, D.I. 12; 18-442-VAC-MPT, D.I. 15.

9

filing of a complaint and its later voluntary dismissal.[14]  These cases do not operate as "partial downside insurance" policies for stockholders.  Instead, the only people who get any money out of the cases are the attorneys—defendants (or their insurance companies) reliably pay their own counsel (I presume), and sometimes pay plaintiff's counsel.

Because Lead Plaintiff did not adequately plead an underlying Section 14(a) violation, his Section 20(a) control-person claim also fails as a matter of law.  *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 159 n.21 (3d Cir. 2004) ("The lack of any predicate violation of the Securities Exchange Act of 1934 compels dismissal of control person claims.").  Thus, the Section 20(a) claim (Count II) is also dismissed with prejudice.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Lead Plaintiff's consolidated amended class action complaint (D.I. 35) is granted.  The federal securities claims (Counts I and II) are dismissed with prejudice, and the state law claim (Count III) is dismissed without prejudice.  An appropriate order will be entered.

Dated: February 1, 2021                                     /s/ Richard G. Andrews
                                                                          UNITED STATES DISTRICT JUDGE

---

[14] Nos. 18-50-LPS; 18-67-VAC-CJB; 18-254-RGA; 18-429-VAC-MPT; 18-959-RGA; 18-1311-MN; 18-1455-CFC; 18-1469-CFC; 18-1983-MN.  (No. 18-127-MAK had some of the same litigation as No. 18-126-MAK).